

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-7-2008

# CSX Trans Inc v. Port Erie Plastics

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4546

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"CSX Trans Inc v. Port Erie Plastics" (2008). *2008 Decisions*. Paper 404.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/404

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4546

_____

CSX TRANSPORTATION, INC.,

Appellant,

v.

PORT ERIE PLASTICS, INC.,

Appellee.


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cv-00139E)
District Judge: Honorable Sean J. McLaughlin

_____

Submitted Under Third Circuit LAR 34.1(a)
October 2, 2008

Before: FISHER, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: October 7, 2008 )


_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

In this appeal, the question is whether CSX Transportation, Inc. (CSX), a railroad carrier, is entitled to collect demurrage fees[1] from Port Erie Plastics, Inc. (PEP), a manufacturer of plastic products.

## I.

Because we write for the parties, we mention only briefly the facts essential to our decision.

PEP entered into a contract to manufacture plastic DVD cases for NexPak, a supplier of custom cases for DVDs and related products. NexPak agreed to provide the requisite plastic resin, which it purchased from BP Amoco on the understanding that "ownership of the resin will not transfer to [PEP] until the material is delivered to [its] facility in Harborcreek, PA" and "ownership and all risk of loss will remain with NexPak, and or the shipping companies, while the resin is in transit or in storage." BP Amoco contracted with CSX to ship the resin to Erie, Pennsylvania, and PEP contracted with Presque Isle Trucking (PIT) to unload the resin and transport it to PEP's Harborcreek facility. When shipments arrived in Erie, CSX issued "constructive placement notices" that notified PIT that a railcar arrived and was available for unloading. PIT did not

---

[1] Demurrage fees are "penalties assessed by railroads when shippers or recipients of freight do not timely return railcars to service after loading or unloading." *CSX Transp. Co. v. Novolog Bucks County*, 502 F.3d 247, 250 (3d Cir. 2007); *see also* BLACK'S LAW DICTIONARY 465 (8th ed. 2004).

unload the cars until instructed to do so by PEP, which in turn did not request resin until it received orders from NexPak.

At all relevant times, CSX operated under a standard tariff, promulgated pursuant to 49 U.S.C. § 10743(a)(1), that governs a consignee's duties with respect to handling inbound railcars. The tariff provides that "[u]nless otherwise advised, in WRITING, that another party is willing to accept responsibility for demurrage, consignor at origin or consignee at destination will be responsible for the payment of demurrage charges." According to the tariff, demurrage fees accrue two days after CSX gives the consignee "constructive placement notice." Although PEP was identified as the consignee in the bills of lading for the shipments at issue here,[2] PEP designated PIT as the party to whom "constructive placement notice" should be given.

Pursuant to the foregoing arrangement, CSX sent fifteen demurrage invoices to PEP between April 2002 and September 2003 totaling $127,116. PEP refused to pay, claiming that it never: "directly contracted" with CSX; "consented to act as a consignee";

---

[2] Because CSX uses a cryptic Electronic Data Interchange (EDI) format to prepare its bills of lading, PEP argues that "[i]t cannot be determined solely from the face of said documents whether the documents pertain to the freight shipments at issue [or] whether [PEP] is identified as a consignee." Recognizing the unintelligibility of the EDI documents, CSX deposed John Underwood, the individual responsible for CSX's demurrage bills. After reviewing the relevant bills of lading, Underwood testified that they all "identif[y] PEP as the consignee of the shipment." PEP submitted no evidence to rebut this testimony and even stipulated to the authenticity of the documents. Accordingly, the District Court found that "the bills of lading generated by the seller of the plastic resin designated [PEP] as the consignee of the resin." We adopt this finding.

3

"knew that it had been listed as a consignee on the bills of lading" generated by BP Amoco; or "acted in a manner demonstrating ownership or control of the resin."

Without the benefit of our decision in *CSX Transportation Co. v. Novolog Bucks County*, 502 F.3d 247 (3d Cir. 2007), the District Court granted PEP's motion for summary judgment, holding that PEP "was not a consignee as a matter of law," and was therefore not responsible for demurrage fees.

## II.

CSX filed a timely notice of appeal and we have jurisdiction pursuant to 28 U.S.C. § 1291. The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal question jurisdiction pursuant to 28 U.S.C. § 1337.

We review the District Court's summary judgment in favor of PEP *de novo* and apply the same standard as the District Court. *Feesers, Inc. v. Michael Foods, Inc.*, 498 F.3d 206, 212 (3d Cir. 2007). We will affirm the judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that PEP is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In making this determination, we view the facts and draw all inferences in the light most favorable to CSX. *Michael Foods*, 498 F.3d at 212 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000)).

4

CSX argues that our decision in *Novolog* compels us to vacate the District Court's order granting summary judgment in favor of PEP. We agree.

In *Novolog*, we held that "recipients of freight who are named as consignees on bills of lading are subject to liability for demurrage charges arising after they accept delivery unless they act as agents of another and comply with the notification procedures established in . . . 49 U.S.C. § 10743(a)(1)." 502 F.3d at 250.

Because there is no genuine issue of material fact regarding PEP's designation as consignee in the bills of lading governing the plastic resin shipments, PEP is presumptively liable for the demurrage fees. *Id*. PEP can rebut this presumption by showing that: (1) it never accepted delivery of the shipments, or (2) it was acting as an agent for NexPak and informed CSX of this arrangement in writing. *Id*. at 250, 259.

PEP does not contest the fact that it never notified CSX in writing that it was acting as NexPak's agent. Rather, PEP argues that it "was never given notice" and was never "aware of its designation as consignee," and therefore, it "cannot be deemed to have *accepted the freight shipments* subject to the demurrage charges." (Emphasis added). CSX counters that PEP accepted the shipments through PIT, "which was acting as PEP's agent, either expressly or under the doctrine of apparent authority, on matters related to the arrival and unloading of the resin contained within the railcars."

The District Court did not decide whether PIT was PEP's agent for purposes of accepting delivery. Because the parties vigorously dispute this potentially dispositive

5

question, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.